# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | No. 3:09-cr-00047-4 |
| | ) | |
| **HERMAN MAJORS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Serving a 324-month sentence with an expected release date of April 1, 2039, Herman Majors has filed a Motion and Supplemental Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(I). (Doc. Nos. 577, 605). The Government opposes the motions (Doc. No. 609), and the issue has been fully briefed by the parties. (Doc. Nos. 605, 609, 611, 614). Majors' Motions will be denied.

### I.

Relief under Section 3582(c)(1)(A) may be warranted in cases where a prisoner, who has exhausted administrative remedies, files a motion and the court finds that a sentence reduction is warranted based on (1) an "extraordinary and compelling reason"; and (2) "any applicable § 3553(a) factors[.]" United States v. Jones, 980 F.3d 1098, 1107–08 (6th Cir. 2020). "[T]he compassionate release decision is discretionary, not mandatory." Id. at 1106. In exercising that discretion, the Court must address both factors when granting relief, but need not do so if one of those factors indicates that relief is not warranted. United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021); United States v. Ruffin, 978 F.3d 1000, 1006 (6th Cir. 2020). Majors' request is subject to denial because he has failed to establish either factor.

## A.

Viewed collectively and in the abstract, Majors' multiple medical maladies may constitute "extraordinary and compelling" reasons for purposes of Section 3582(c), particularly given the potential perniciousness of a pandemic in a prison setting. These include: essential hypertension; stage 3 chronic kidney disease; insulin-dependent Type 2 diabetes; an enlarged prostrate; an "old myocardial infarction"; and obesity (based upon a body mass index (BMI) of 35.1). (Doc. No. 605 at 1-2). Taken collectively and in the abstract, this Court agrees that these conditions are "extraordinary and compelling" for purposes of Section 3582(c), particularly given the potential perniciousness of the coronavirus in a prison setting. There is, however, a caveat.

Two days before he filed a *pro se* motion for compassionate release, Majors was offered the vaccination for COVID-19, but refused. This cuts against a finding of "extraordinary and compelling circumstances warranting release. As one court has observed:

> The court does not find that the existence of COVID-19, and the possibility Defendant could contract the disease in the future, present extraordinary and compelling circumstances. Defendant was given the opportunity to receive a safe, effective, and reliable vaccine, and []he refused.
>
> Defendant does not convincingly establish that h[is] conditions are exceptional and demand immediate release when []he intentionally prevents prison officials from mitigating dangers to h[is] health and safety. A prisoner will not be heard to complain of the risk of severe illness while []he simultaneously avoids basic, sensible precautionary measures such as vaccination. Allowing a prisoner to qualify for compassionate release in the face of h[is] refusal to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated. This court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be plainly counter-productive and dilute the ameliorative purposes of compassionate release.

United States v. Jordan, No. 18-20774, 2021 WL 2327937, at *2 (E.D. Mich. June 8, 2021). Other

courts within this circuit have voiced similar concerns. See, e.g., United States v. Craig, No. 1:19CR147, 2021 WL 2315222, at *2 (N.D. Ohio June 7, 2021) (opining that the Bureau of Prisons ("BOP") has "now demonstrated [an] ability to manage COVID-19," stating that the BOP "has fully inoculated 68,833 inmates and 18,869 staff members," and noting that inmate's refusal to take the COVID-19 vaccine was "an individualized factor further supporting denial of his motion" for compassionate release); United States v. McComb, No. 2:04-CR-114, 2021 WL 2102026, at *2 (S.D. Ohio May 25, 2021) ("While defendant had the right to decline receiving the vaccine, his unexplained refusal casts some doubt on the sincerity of his concern about contracting the disease"). This includes at least one judge within this district so far. See, United States v. French, No. 3:10-CR-00117-1, 2021 WL 1316706, at *6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.) ("Defendant's refusal of the COVID-19 vaccine substantially undermines his argument that his risk of reinfection constitutes an extraordinary and compelling reason that justifies his release.")

Of course, whether to be vaccinated or not is entirely Major's choice, and the Court does not denigrate that decision. He is not alone in making that choice, as many others have decided not to be vaccinated. Even so, the BOP has made remarkable strides since the outbreak of COVID-19 in trying to get the virus under control within its institutions. Presently, of the 129,600 federal inmates, only 50 have confirmed positive test results for COVID-19. www.bop.gov/coronavirus (all websites last visited July 1, 2021). At Butner FCI Medium-I where Majors is now housed, no inmates or staff presently have COVID-19. Id. More importantly, at the Butner Federal Corrections Center, of which Butner FCI Medium-I is a part, 2,434 inmates and 896 staff members have been fully vaccinated. Id. With a total inmate population of 3,532 for the four facilities that comprise the

3

complex,[1] www.bop.gov/locations/institutions/but/, BOP figures show that more than two-thirds have been vaccinated. This bodes well for all prisoners, including those like Majors who refused to be vaccinated. See, e.g., United States v. Brownlee, No. 15-20319, 2021 WL 1960974, at *3 (E.D. Mich. May 17, 2021) (noting that federal "prison authorities have substantially reduced the risk of spread and exposure to COVID-19 through the vaccination of other inmates," and concluding that, even "with Defendant refusing to receive a COVID-19 vaccine, there is no more than an exceedingly slim possibility that COVID-19 will spread through [his prison], that prison officials will then fail to contain the outbreak, that Defendant will contract COVID-19, and that he will subsequently develop life-threatening symptoms"); Craig, 2021 WL 2315222, at *2 (court concluding that it could "no longer find that the COVID-19 pandemic can be relied upon to demonstrate extraordinary and compelling reasons" because "only 1 in every 3,400 inmates has a current positive test," and "[n]early 70,000 inmates are no longer at risk due to being vaccinated"); United States v. Woods, 3:13-CR-117-CRS, 2021 WL 2649496, at *5 (W.D. Ky. June 28, 2021) (noting that, at facility where defendant was housed, 783 of 961 inmates had been vaccinated and that, while defendant himself declined the vaccine, "those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison," making it "highly unlikely" that he would catch COVID-19). Although the Court at this time declines to "take the hard line" that refusing to be vaccinated renders a "motion for compassionate release a non-starter," Majors' "decision to decline the vaccine, while perfectly within his right, was a personal decision not to further mitigate the already very significantly reduced risk of complications from contracting COVID-19," and,

---

[1] Those facilities are: the Butner Federal Medical Center, Butner FCI Low, Butner FCI Medium-I, and Butner FCI Medium-II.

therefore, "his fear is partially of his own volition." Woods, 2021 WL 2649496, at *6.[2]

**B.**

Health issues and the risk of catching COVID-19 aside, Majors argues in his reply brief that extraordinary and compelling reasons exist for a sentence reduction based upon the recent decision in United States v. Owens, 996 F.3d 755 (6th Cir. 2021). There, the Sixth Circuit held that the district court erred in "conclud[ing] that the disparity that [defendant] received and the sentence he would receive today because of the First Step Act's amendments to § 924(c) was not an 'extraordinary and compelling reason' to merit compassionate release." Id. at 758. Owens has since been called into question by both published and unpublished opinions of the Sixth Circuit because (1) it "does not follow Tomes'[3] reasoning or holding that a non-retroactive First Step Act amendment fails to amount to an 'extraordinary and compelling' explanation for a sentencing reduction.," and (2) earlier published opinions take precedent over new ones. United States v. Jarvis, ___ F.3d ___, ___, 2021 WL2253235, at *4 (6th Cir. June 3, 2021). After all, according to the Sixth Circuit in Jarvis, "the text of th[e] sentencing statutes does not permit [a court] to treat the First Step Act's non-retroactive amendment, whether by themselves or together with other factors, as 'extraordinary and compelling.'" Id. at *3 (citing Tomes, 990 F.3d at 505); see also United States v. Corona, 2021 WL

---

[2] The Court recognizes that since the briefing has been completed, Majors may have been vaccinated. According to the Government, although Majors initially declined the vaccine, he has since changed his mind and will be vaccinated once another batch of the vaccine has been received at Butner. (Doc. No. 609 at 9). Likewise, a fair reading of Majors' arguments in his reply brief (Doc. No. 611) suggests that he has either been, or is about to be, vaccinated, and the record reflects that Majors sent an note to prison authorities on April 6, 2021, stating that he agreed to being inoculated with the Pfizer vaccine (Doc. No. 604-6). This does not change the result, however. As this Court recently pointed out, "virtually every district court," including many within this circuit, have concluded that being fully vaccinated "precludes a finding of an 'extraordinary and compelling' reason within the meaning of Section 3582(c)(1)(A)." United States v. Jackson, No. 3:11-CR-00138, 2021 WL 1721427, at *2 (M.D. Tenn. Apr. 30, 2021).

[3] United States v. Tomes, 990 F.3d 500 (6th Cir. 2020).

5

2345769, *3 (6th Cir. June 8, 2021) (following Jarvis, stating that "Owens' conclusion cannot be squared with Tomes," and observing that "such a back door attempt to reintroduce an expressly excluded factor thwarts congressional intent in making the First Step Act non-retroactive").

The interplay between Tomes, Owens, and Jarvis will hopefully be sorted out by the Sixth Circuit in due time. Fortunately, at least for the time being, this Court need not decide whether Tomes should be followed because it is the earliest published opinion, or whether Owens was correct in its observation that the First Step Act language in Tomes was nothing more than *dicta*. This is because Majors' arguments do not arise under the Act, or any other change in the law.

Majors argues that he was penalized for going to trial, and that he should not have been held liable for cocaine trafficked after he was incarcerated under a Pinkerton liability theory. These same arguments were considered in the context of Majors' direct appeal and/or his § 2255 motion, but "a § 3582 motion is not an avenue for a prisoner to seek "a 'do-over' of his sentencing." United States v. Stewart, No. 09CR03124PJSFLN, 2021 WL 1811845, at *3 (D. Minn. May 6, 2021); see also United States v. Logan, No. 97CR00993PJSRLE, 2021 WL 1221481, at *6 (D. Minn. Apr. 1, 2021) ("Defendants enjoy a range of safeguards that are intended to prevent or correct unjust sentences" and "allow[ing] a defendant to use a compassionate-release request as yet another avenue to attack the legality or validity of a sentence would, as a practical matter, render nugatory the carefully crafted rules that govern those safeguards"); United States v. Dickerson, No. 1:09-CR-10096, 2021 WL 674008, at *5 (C.D. Ill. Feb. 22, 2021) ("The Court is mindful that no amount of time is insignificant for defendants serving sentences of imprisonment, but compassionate release is not a sentencing 'do-over[.]'"). Even assuming Owens controls, the Court does not believe that it can be read as allowing the whole scale re-hashing of arguments already raised and rejected, so as to allow

6

for a second, third, fourth, or fifth bite at the proverbial sentencing apple.

## C.

The applicable 18 U.S.C. § 3553(a) factors do not favor early release, either. As he has in the past, Majors argues that he simply served as a drug courier for only a year, during which time he made no more than four trips. He also argues that, "[s]urely, 60 months of imprisonment is sufficient punishment" for that conduct. (Doc. No. 605 at 6). The fact remains, however, that Majors was part of a drug trafficking conspiracy involving over 150 kilos of cocaine, which triggered a base offense level of 38. While this was Majors' first drug-trafficking conspiracy conviction, his very lengthy and serious criminal history resulted in a Criminal History category VI. This history spans more than twenty-five years, and includes convictions for assault and battery, arson, burglary, attempted aggravated robbery, evading arrest, aggravated assault, and drug possession and theft offenses. (Presentence Report ¶¶ 38-54). Majors also committed the instant offense while under another criminal justice sentence. (Id. ¶ 54).

Majors points out that, since being in federal prison, he has not been subject to any disciplinary action. According to the probation department, not only has been he not been in trouble while incarcerated, Majors has enrolled in the GED program and has worked as a recreation assistant and orderly. All of this is to Majors' credit, but it hardly makes up for his past. Moreover, Majors has presently served less than five years of his 27-year sentence.[4] Allowing Majors early release

---

[4] Majors was initially sentenced by another judge to a 360 month term of imprisonment on June 20, 2012, but he did not begin serving his federal sentence until after completing a previously imposed state sentence. The sentence was modified by the undersigned to a term of 324-months on January 2, 2020, as a result of Amendments 782 and 788 to the Sentencing Guidelines.

would not serve as a specific deterrent to him, or as a general deterrent to others. It would also diminish the gravity of the crime for which he stands convicted.

## II.

Because Majors has not shown "extraordinary and compelling" reasons for his release, and because the Section 3553(a) factors do not warrant it either, his Motion and supplemental Motion for Compassionate Release under 18 U.S.C. § 3582 (Doc. Nos. 577, 605) are DENIED.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE